UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

**FILED**

**FEB 0 8 2010**

CLERK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and the STATE OF SOUTH DAKOTA, | ) ) ) ) | CASE NO. *09-5103* |
| Plaintiffs, | ) ) |  |
| v. | ) ) | **CONSENT DECREE** |
| COMMONWEALTH MINING COMPANY, | ) ) ) |  |
| Defendant. | ) ) |  |

## I.  BACKGROUND

**WHEREAS**, the United States of America ("United States"), on behalf of the

Administrator of the United States Environmental Protection Agency ("EPA"), and the Attorney

General for the State of South Dakota, on behalf of the South Dakota Department of

Environment and Natural Resources ("DENR"), filed a complaint in this matter under Section

107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980,

42 U.S.C. § 9607, as amended ("CERCLA"), seeking reimbursement from the Settling

Defendant of Response Costs incurred and to be incurred by EPA and DENR for response

actions taken in connection with the release or threatened release of hazardous substances at and

from the Gilt Edge Mine Superfund Site ("Site") located in Lawrence County, South Dakota.

The complaint, among other things, alleges that Settling Defendant's liability under Section

1

107(a) of CERCLA, 42. U.S.C.§ 9607(a), arises from Settling Defendant's ownership of numerous mining claims included within the Site and Settling Defendant's leasing of such mining claims to various mine operators;

**WHEREAS**, the Site is located about five miles east of Lead, South Dakota, at the headwaters of the cold-water fisheries and municipal water supplies in the northern Black Hills. Mining operations for gold, copper and tungsten were conducted at the Site starting in 1876. Since that time, mining and mineral processing have been conducted at the Site with major periods of activity occurring from the mid-1930s, when the Site was operated by Gilt Edge Mining Company, and from the mid-1980s to approximately 1997, when the Site was operated by Brohm Mining Company. During other periods of the Site's history, a number of other owners and operators, including private individuals as well as companies, have conducted a range of mining and mineral processing activities at the Site;

**WHEREAS**, historical mining and processing activities have extensively disturbed the land and resulted in key features that remain at the Site including open pits, underground mine workings, waste rock dumps, and hundreds of rotary and core holes drilled throughout the surface of the mine that contribute to acid rock drainage (ARD). EPA previously has documented the release of cadmium, cobalt, copper, manganese, lead and zinc from the Site into nearby Strawberry Creek and Bear Butte Creek;

**WHEREAS**, pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register in December 2000;

**WHEREAS**, Commonwealth Mining Company is a privately owned South Dakota

2

company that owns mining claims at the Site and within its watershed, and that leased these properties in return for royalty payments during mining operations at the Site but did not engage directly in the processing or recovery of metals from the Site;

**WHEREAS**, in performing response actions at the Site, Plaintiffs have incurred Response Costs and will continue to incur Response Costs in the future;

**WHEREAS**, Plaintiffs allege that Settling Defendant is a responsible party pursuant to Section 107(a) of CERCLA, 42 U.S.C. §9607(a) and is jointly and severally liable for Response Costs, together with accrued interest, incurred and to be incurred at the Site;

**WHEREAS**, Plaintiffs have reviewed the Financial Information submitted by Settling Defendant to determine whether Settling Defendant is financially able to pay Response Costs incurred and to be incurred by Plaintiffs at the Site. Based upon this Financial Information, identified in Appendix A, Plaintiffs have determined that Settling Defendant is presently unable to pay all Response Costs, but is able to provide the contributions as required under Section VI;

**WHEREAS**, Settling Defendant has entered into this Consent Decree without admitting any liability to Plaintiffs arising out of the transactions or occurrences alleged by Plaintiffs in their complaint;

**WHEREAS**, Plaintiffs and Settling Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest;

**THEREFORE**, with the consent of the Parties to this Consent Decree, it is **ORDERED, ADJUDGED, AND DECREED AS FOLLOWS**:

3

## II. JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendant. Settling Defendant consents to and shall not challenge the entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2. This Consent Decree is binding upon the United States, the State and upon Settling Defendant and Settling Defendant's successors and assigns, provided, however, that Settling Defendant's successors and assigns do not include bona fide purchasers who acquire any Adjacent Property in accordance with Paragraph 9 below. Any change in Settling Defendant's corporate ownership or legal status shall in no way alter responsibilities of Settling Defendant under this Consent Decree.

3. Settling Defendant agrees to provide to Plaintiffs notice of any change in its corporate ownership or legal status, including but not limited to any transfer of assets or real or personal property. Notice required by this paragraph shall be made in accordance with Section XVII (Notices and Submissions) of this Consent Decree.

## IV. DEFINITIONS

4. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in any appendix, the following definitions shall apply:

4

a. "Adjacent Property" shall mean all real property other than Site Property currently owned by Settling Defendant or in which Settling Defendants holds an ownership interest more particularly described in Appendix C hereto.

b. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*.

c. "Consent Decree" shall mean this Consent Decree and all appendices affixed hereto. In the event of conflict between this Consent Decree and any appendices, the Consent Decree shall control.

d. "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, State or federal holiday, the period shall run until the close of business of the next working day.

e. "DENR" shall mean the South Dakota Department of Environment and Natural Resources and any successor departments, agencies, or instrumentalities of the State of South Dakota.

f. "DOJ" shall mean the United States Department of Justice and any successor departments, agencies, or instrumentalities of the United States.

g. "Effective Date" shall be the date this Consent Decree is entered by the Court.

h. "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

i. "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

j. "Fair Market Value" shall, except in the event of a foreclosure or transfer by deed

5

or other assignment in lieu of foreclosure, mean the price at which the Adjacent Property would change hands between a willing buyer and a willing seller under actual market conditions, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. In the event of a transfer by foreclosure, "Fair Market Value" shall mean the amount obtained at the foreclosure sale. In the event of a transfer by a deed or other assignment in lieu of foreclosure, "Fair Market Value" shall mean the balance of Settling Defendant's mortgage and/or satisfaction of outstanding liens on the Adjacent Property at the time of the transfer.

k.     "Financial Information" shall mean those financial documents provided by the Settling Defendant to EPA which are listed in Appendix A.

l.     "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

m.     "Institutional Controls" shall mean any controls developed by EPA to implement, monitor, and maintain the response actions selected for the Site. Institutional Controls may include, but are not limited to: (i) mandatory controls which require actions necessary to protect or maintain the response actions; (ii) prohibitions which limit activities or land use that would disturb Waste Material or make Waste Material more available to or mobile in the environment; or (iii) prohibitions or limitations on activities that would compromise the integrity of the response actions. Institutional Controls may

6

be enforced at the Site through State, county, or municipal codes, regulations, or laws.

n.     "Insurance Policies" shall mean any insurance policies that were issued to or for the benefit of the Settling Defendant, including but not limited to liability insurance policies for which the Settling Defendant or any predecessor is an "insured", "named insured" or "additional insured", including but not limited to comprehensive, primary, umbrella, and excess policies and including environmental impairment and pollution liability policies which may provide coverage for all or part of the claims that the United States is making against Settling Defendant.

o.     "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

p.     "Net Sales Proceeds" shall mean the total value of all consideration received by Settling Defendant for each Transfer (or if the consideration cannot be determined, the Fair Market Value) less (i.) closing costs limited to those reasonably incurred and actually paid by Settling Defendant associated with the Transfer, (ii.) federal, state, or local taxes owed on Transfer proceeds, and (iii.) balance of Settling Defendant's mortgage on the Adjacent Property and/or satisfaction of valid outstanding liens, if any. Settling Defendant shall provide EPA and the State with documentation sufficient to show the total value of all consideration received by Settling Defendant for each Transfer (or if the consideration cannot be determined, the Fair Market Value) at the time of each Transfer,

the amount of the proceeds of the Transfer, and the amounts corresponding to items (i.) through (iii.) above. The documentation shall include, either as part of the report or separately, a tax statement showing the assessed valuation for each of the three years immediately preceding the Transfer. Any notice(s) or documentation required by this subparagraph shall be provided to EPA by Settling Defendant in accordance with Section XVII (Notices and Submissions) of this Consent Decree.

q. "Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper or lower case letter.

r. "Parties" shall mean the United States, the State of South Dakota, and the Settling Defendant.

s. "Plaintiffs" shall mean the United States and the State of South Dakota.

t. "Response Costs" shall mean all costs of response as the term is defined by Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), related to the Gilt Edge Superfund Site, plus accrued Interest on all such costs, incurred or to be incurred by the United States and the State.

u. "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

v. "Settling Defendant" shall mean Commonwealth Mining Company and its successors or assigns.

w. "Site" shall mean the Gilt Edge Mine Superfund Site located in Lawrence County, South Dakota and generally depicted on the map attached hereto as Appendix B.

8

x.    "Site Property" shall mean that portion of the Site currently owned by Settling Defendant and more particularly described in Appendix D hereto.

y.    "State" shall mean the State of South Dakota, including its departments, agencies and instrumentalities.

z.    "Transfer" shall mean each sale, assignment, transfer or exchange by Settling Defendant (or its successors) of any Adjacent Property, or any portion thereof, where title is transferred and payment is received in consideration, or is transferred involuntarily by operation of law, including foreclosure and its equivalents following default on the indebtedness secured, in whole or in part, by the Adjacent Property, including, but not limited to, a deed or other assignment in lieu of foreclosure.

aa.   "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

## V.  STATEMENT OF PURPOSE

5.    By entering this Consent Decree, the mutual objective of the Parties is for Settling Defendant to address its liability for the Site as provided in the Covenant Not to Sue by Plaintiffs in Section VIII and subject to the Reservations of Rights by the United States in Section IX

## VI.  CONFESSION AND SATISFACTION OF JUDGMENT

6.    Settling Defendant hereby agrees and confesses to entry of a judgment against the Settling Defendant and in favor of the Plaintiffs in the amount of Six Million Two Hundred Thousand Dollars ($6,200,000). Plaintiffs shall file this judgment as and where necessary to preserve secured creditor status in favor of Plaintiffs. This judgment shall remain in effect until

Settling Defendant has complied with all requirements in this Consent Decree. Such judgment shall be satisfied solely through (i) the assignment to EPA of all potential rights to insurance claims proceeds under the Insurance Policies held by Settling Defendant, its predecessors in interest, or affiliates, as set forth in Paragraph 7 below, and (ii) the transfers of real property in accordance with Paragraphs 8 and 9. Any cash payments made by Settling Defendant pursuant to this Consent Decree shall, in the aggregate, not exceed the judgment amount. Upon approval and entry of this Consent Decree, it shall constitute the final judgment for resolution of Plaintiffs' claims against Settling Defendant, and no other form of judgment shall be required under the terms of this Consent Decree.

7.      By this Consent Decree and upon entry of this Consent Decree by the Court, Settling Defendant shall be deemed to have irrevocably assigned to EPA all potential rights to insurance claims proceeds under the Insurance Policies, including but not limited to all claims and proceeds under the Insurance Policies with respect to the United States' claims with respect to the Site and with regard to all expenditures to date by the Settling Defendant relating to the Site. The Settling Defendant further agrees to execute any and all additional documents necessary to effectuate this assignment and to allow and facilitate the pursuit and collection by EPA or its designees of any insurance claims and proceeds under the Insurance Policies. The Settling Defendant further agrees to fully and timely cooperate with the United States in efforts to locate the Insurance Policies or evidence of the Insurance Policies. in presenting insurance claims, and in addressing and responding to inquiries by insurers regarding claims made under the Insurance Policies.

10

8.     Transfer of Site Property. In consideration of the covenants not to sue set forth in Paragraph 17 , Settling Defendant agrees to transfer to the State by quit claim deed the Site Property within thirty days of receipt of a request from the State to complete the transfer. Alternatively, at the request of the State, Settling Defendant agrees to tender quit claim deeds to the Site Property to an escrow agent in order to facilitate the ultimate transfer to the Site Property to the State. The State may request a transfer of all Site Property or some portion thereof. The State must make all such requests within five (5) years of the Date of Entry of this Consent Decree.

9.     Sale of Adjacent Property. Upon the Effective Date of this Consent Decree, Settling Defendant shall begin using its "best efforts" to sell all Adjacent Property. Upon the Transfer of any portion of the Adjacent Property, Settling Defendant shall pay to the EPA, sixty percent (60%) of the Net Sales Proceeds of any Transfer to EPA until EPA has received a total of two hundred fifty thousand dollars ($250,000). For all Transfers of Adjacent Property thereafter, Settling Defendant shall pay to the EPA, fifty percent (50%) of the Net Sales Proceeds of any Transfer.

10.     Settling Defendant shall make all necessary arrangements with the title company or other entity conducting the closing on any Transfer to pay to EPA the amounts specified in Paragraph 9 within thirty (30) days after any closing. Until the wire transfer of funds to the Special Account is completed pursuant to Paragraph 16, all Net Sales Proceeds shall be held in an escrow account for the benefit of the EPA by the title company or other entity conducting the closing. In the event there is any dispute with regard to the amounts owed EPA under this

11

Section, the disputed portions of the funds shall be held in escrow for the benefit of the Parties pending resolution of the dispute in accordance with Section XIV (Dispute Resolution).

11.     Where any Transfer is for a sum less than the tax assessed value of the Adjacent Property, Settling Defendant shall provide notice to EPA at least thirty (30) days in advance of said Transfer. For such Transfers, EPA in its sole discretion, may require Settling Defendant to submit an appraisal of the Adjacent Property subject to the Transfer that is performed by an independent appraiser, upon generally recognized appraisal assumptions at least thirty (30) days in advance of said Transfer. EPA may object to the Transfer based on the proposed sale price. Any such dispute shall be resolved in accordance with Section XIV (Dispute Resolution).

12.     For the purposes of Paragraph 9, best efforts to sell property shall include, but not be limited to:

a.      Ensuring that the Adjacent Property is sold for the highest price;

b.      Employing a real estate agent or broker who is licensed in the State of South Dakota and who shall follow the usual and normal practices for selling real estate, including, for example, listing the Adjacent Property in one or more real estate listing services regularly used by real estate agents, brokers, and others and using other reasonable means to ensure that the availability for sale is known to potential buyers;

c.      Responding to the reasonable inquiries of prospective buyers;

d.      Maintaining the Adjacent Property in a condition suitable for exhibition to prospective buyers;

e.      Allowing the Adjacent Property to be shown at all reasonable times; and

12

f.      Assisting the broker, dealer or agent in any other reasonable way requested in an effort to sell the Adjacent Property.

13.     If any portion of the Adjacent Property subject to sale is not sold by the fifth anniversary of entry of this Consent Decree, Settling Defendant agrees to auction such Adjacent Property to the highest bidder. Settling Defendant agrees to engage a professional auctioneer and to fully publicize the auction, by means of daily advertisements in local newspapers for thirty (30) days preceding the auction, as well as by all other appropriate and customary means. Auction proceeds shall be paid to EPA within thirty (30) days of any Transfer in the amounts specified in Paragraph 9 and in accordance with the payment provisions specified in Paragraph 16. Settling Defendant shall timely provide to Plaintiffs copies of all advertising published with respect to the Adjacent Property, indicating when such advertising was displayed. Copies shall be considered timely if the copies of the advertising were sent to EPA and DOJ within thirty (30) days after such advertising was displayed.

14.     At least thirty (30) days prior to any Transfer of Adjacent Property by Settling Defendant, Settling Defendant shall notify EPA of the proposed Transfer, which notice shall include: (i) a description of the real estate to be sold; (ii) the identity of the successor-in-interest; (iii) the terms of the Transfer, including the estimated closing costs, the consideration to be paid and a copy of the Transfer agreement; (iv) the name and address of the title company or other entity conducting the closing; and (v) the date on which the successor-in-interest was given notice of the requirements of this Consent Decree. Settling Defendant shall notify EPA of the completion of the Transfer within ten (10) days after the date of closing and shall include with

13

such notification a copy of the closing binder, including final executed documentation for the conveyance and a work sheet setting forth the Net Sales Proceeds and the amount payable to EPA.

15.     Unless the United States and Settling Defendant agree in writing otherwise, Settling Defendant shall not hold a mortgage or other security interest from any purchaser of property and Settling Defendant shall ensure that any contract for sale of any property requires that the closing occur within sixty (60) days of satisfaction of all contingencies of the contract. If the United States and the Settling Defendant agree, the procedures and timetables set forth in this Section of this Consent Decree may be altered or amended by the United States in writing without modification pursuant to Section XVI of this Consent Decree (Modification).

16.     All payments required to be made by Settling Defendant pursuant to the terms of this Consent Decree shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USAO File Number __, the EPA Region and Site Spill ID Number 08-7T, and DOJ Case No. 90-11-3-08278. Payments shall be made in accordance with instructions provided to Settling Defendant by the Financial Litigation Unit of the U.S. Attorney's Office in the District of South Dakota following lodging of the Consent Decree. Any payment received by the Department of Justice after 4:00 PM Eastern Time shall be credited on the next business day. Settling Defendant shall send notice that payment has been made in accordance with Paragraph 46. All payments required to be made by Settling Defendant pursuant to this Consent Decree shall be deposited in the Gilt Edge Site Special Account within the EPA Hazardous Substance Superfund to be

14

retained and used to conduct or finance EPA's and the State's response actions at or in connection with the Site. Any balance remaining in the Gilt Edge Site Special Account at the completion of EPA's and the State's actions at the Site shall be transferred by EPA to the EPA Hazardous Substance Superfund.

## VII. **CERTIFICATION**

17.     Settling Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it:

a.     has not knowingly or intentionally altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or information relating to its potential liability regarding the Site since notification of potential liability by EPA and that it has fully complied with any and all EPA requests for documents or information regarding the Site and Settling Defendant's financial circumstances;

b.     has submitted to EPA Financial Information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Settling Defendant executed this Consent Decree; and

c.     has fully disclosed the existence of any known Insurance Policies, or evidence of such policies, that may cover claims relating to cleanup of the Site that it continues to hold all rights under the Insurance Policies, and that it has not settled compromised or assigned any insurance rights or the assigned claims proceeds prior to approval of this Consent Decree.

15

## VIII.  COVENANT NOT TO SUE BY PLAINTIFFS

18.     Except as specifically provided in Paragraph 19 (Reservation of Rights by Plaintiffs), Plaintiffs covenant not to sue or to take administrative action against Settling Defendant for actions relating to the Site (i) pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover Response Costs incurred at the Site; and (ii) pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606.  With respect to both present and future liability, this covenant not to sue shall take effect upon receipt by Plaintiffs of all payments required to be made under Paragraph 9 and 13, and upon the conveyance of the Site Property in accordance with Paragraph 8, whichever date is later.  These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree, including but not limited to, the pursuit, and collection of insurance claims proceeds, the conveyance of the Site Property and the sale of the Adjacent Property.  These covenants not to sue are also conditioned upon the veracity and completeness of the Financial Information provided to EPA by Settling Defendant.  If the Financial Information is subsequently determined by the Plaintiffs to be false or, in any material respect, inaccurate, the covenant not to sue shall be null and void.  This covenant not to sue extends only to Settling Defendant and does not extend to any other person.

## IX.  RESERVATION OF RIGHTS BY PLAINTIFFS

19.     The Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within

16

the Covenant Not to Sue by Plaintiffs in Paragraph 18. Notwithstanding any other provision of this Consent Decree, the Plaintiffs reserve all rights against Settling Defendant with respect to:

a.    liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

b.    criminal liability;

c.    liability for damages for injury to, destruction of, or loss of natural resources relating to the Site; and

d.    liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site.

20.    Notwithstanding any other provision of this Consent Decree, Plaintiffs reserve, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if any of the certifications made by Settling Defendant in Paragraph 16 are false or, in a material respect, inaccurate.

## X.  COVENANT NOT TO SUE BY SETTLING DEFENDANT

21.    Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the Plaintiffs, or their contractors or employees, with respect to the Site, or this Consent Decree, including but not limited to:

a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund relating to the Site based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other

17

provision of law;

b.  any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the South Dakota Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

c.  any claim against the Plaintiffs pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the Site.  Except as provided in Paragraph 23 (Waiver of Claims) and Paragraph 27 (Waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event the Plaintiffs bring a cause of action or issue an order pursuant to the reservations set forth in Paragraph 19 (c) - (d), but only to the extent that Settling Defendant's claims arise from the same response action or response costs that the Plaintiffs are seeking pursuant to the applicable reservation.

22.  Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

23.  Settling Defendant agrees not to assert any CERCLA claims or causes of action that it may have for all matters relating to the Site, including for contribution, against any other person, except as requested by Plaintiffs as necessary to the pursuit of insurance claims proceeds. Furthermore, nothing herein shall be deemed to affect or

18

limit in any way any rights, claims, causes of action, or entitlements that Settling Defendant and the Plaintiffs have or may have to seek and obtain payment for the full amount of Settling Defendant's liability at the Site and any claims related to any other site.

## XI. EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

24. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Decree may have under applicable law. Except as provided in Paragraph 19, the Parties expressly reserve any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

25. The Parties agree, and by entering this Consent Decree this Court finds, that Settling Defendant is entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are: all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States, the State, or any other person. The "matters addressed" in this Consent Decree do not include those response costs, response actions, or damages as to which Plaintiffs have reserved their rights under this Consent Decree (except for claims

19

for failure to comply with this Decree), in the event that Plaintiffs assert rights against Settling Defendant coming within the scope of such reservations.

26.     Settling Defendant agrees that, with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify the United States and the State in writing within 10 days of service of the complaint or claim upon it. In addition, Settling Defendant shall notify the United States and the State within 10 days of service or receipt of any Motion for Summary Judgment, and within 10 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

27.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, recovery for natural resource damages, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiffs set forth in Section VIII.

## XII.  SITE ACCESS AND ENVIRONMENTAL COVENANTS

28.     With respect to any real property included within the Site that is now

owned or controlled by Settling Defendant or subsequently acquired by Settling Defendant,
Settling Defendant shall:

a.     Provide the United States, the State, and their representatives and contractors
access at all reasonable times to the Site and to any other property owned or controlled
by Settling Defendant to which access is determined by the United States or the State to
be required for the implementation of this Consent Decree, or for the purpose of
conducting any response activity related to any of the Site, including but not limited to:

1.)     Monitoring, investigation, removal, remedial or other activities;

2.)     Verifying any data or information submitted to the United States or the
State;

3.)     Conducting investigations relating to contamination at or near the
Site;

4.)     Obtaining samples; and

5.)      Assessing the need for, planning, or implementing response actions at
or near the Site.

b.     Refrain from using such property in any manner that would interfere with
or adversely affect the implementation, integrity, or protectiveness of the response
actions already performed or instituted at the Site, or the response actions or reclamation
work to be performed or instituted in the future.

29.     Environmental Covenants. With respect to any real property included
within the Site that is owned by Settling Defendant, Settling Defendant shall, at the

21

request of the United States or the State, execute and record in the appropriate county land office an environmental covenant for all portions of such properties where an engineered feature or structure has been incorporated in conjunction with a response activity that requires monitoring, maintenance, or operation or that will not function as intended if it is disturbed, or where residual contamination remains at levels that have been determined to be safe for one or more specific uses, but not all uses, as determined by the United States or the State. Settling Defendant shall execute and record such environmental covenants within thirty (30) days following any request to do so from the United States or the State.

30.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, including enforcement authorities related thereto, under CERCLA, the Solid Waste Disposal Act, 42 U.S.C. § 6901, *et seq.* (also known as the "Resource Conservation and Recovery Act" or "RCRA"), and any other applicable statutes or regulations.

## XIII.  RETENTION OF RECORDS

31.     Until five (5) years after entry of this Consent Decree, Settling Defendant or its agent shall preserve and retain all records now in its possession or control, or which come into its possession or control, that relate in any manner to the Insurance Policies or evidence of the Insurance Policies, or to response actions taken at the Site, regardless of any corporate retention policy to the contrary.

32.     After the conclusion of the five (5) year document retention period, Settling Defendant shall notify the United States at least 90 days prior to the destruction of any such

22

records, and, upon request by the United States or the State, Settling Defendant shall deliver any such records to the requesting Party. Settling Defendant may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege, it shall provide Plaintiffs with the following: 1) the title of the record; 2) the date of the record; 3) the name and title of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted. However, no records created or generated pursuant to the requirements of this or any other settlement with the United States or the State shall be withheld on the grounds that they are privileged.

## XIV. DISPUTE RESOLUTION

33.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendant that have not been disputed in accordance with this Section.

34.     Informal Dispute Resolution. Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties. The period for informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless the period of time is modified by written agreement of the Parties. The dispute shall be considered to have arisen when one Party sends the other Party a written Notice of Dispute.

35. Formal Dispute Resolution. In the event that the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within ten (10) days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving by first class, return receipt mail on the Assistant Regional Administrator of the Office of Enforcement, Compliance and Environmental Justice, EPA Region 8 ("Assistant Regional Administrator"), a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendant. Within fifteen (15) days after receipt of Settling Defendant's Statement of Position, EPA will serve by first class, return receipt mail on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. Within fifteen (15) days after receipt of EPA's Statement of Position, Settling Defendant may serve by first class, return receipt mail on the Assistant Regional Administrator, a written Reply. Formal dispute resolution shall be governed by this Paragraph. Following receipt of Settling Defendant's written Reply, the Assistant Regional Administrator will issue a final decision resolving the dispute. The Assistant Regional Administrator's decision shall be binding on the Settling Defendant unless, within ten (10) days of receipt of the decision, the Settling Defendant files with the Court and serves on the United States pursuant to Rule 4, Federal Rules of Civil Procedure, a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within

24

which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendant's motion. Judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

36.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendant under this Consent Decree, not directly in dispute, unless EPA agrees or the Court directs otherwise.

## XV.  FAILURE TO COMPLY WITH CONSENT DECREE

37.     Interest on Late Payments and Stipulated Penalty.

a.     If any amounts due under Paragraph 9 or 13 are not paid by the required date, Interest shall accrue on the unpaid balance through the date of payment.

b.     If any amounts due under Paragraph 9 or 13 not paid by the required date, Settling Defendant shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, one hundred dollars ($100) per violation per day that such payment is late. If Settling Defendant does not comply with the non-payment obligations set forth in the Consent Decree, including obligations relating to conveyance of real property, access and institutional controls, Settling Defendant shall be in violation of this Consent Decree and shall pay to EPA, as a stipulated penalty, $1000 per violation per day of such noncompliance.

38.     Stipulated penalties are due and payable within 30 days of the date of the demand for payment of the penalties by Plaintiffs. All payments under this Paragraph shall be identified as "stipulated penalties" and shall be made by certified or cashier's check made payable to "EPA

25

Hazardous Substance Superfund" or by wire transfer. The check, or a letter accompanying each

check, shall identify the name and address of the party making payment, the Site name, the EPA

Region and Site/Spill ID # 08-7T, and shall be sent to:

Regular mail:                    US EPA, Superfund Payments
                                 Cincinnati Finance Center
                                 PO Box 979076
                                 St. Louis, MO 63197-9000

Overnight Mail:                  U.S. Bank
                                 Government Lockbox 979076
                                 US EPA Superfund Payments
                                 1005 Convention Plaza
                                 SL-MO-C2-GL
                                 St. Louis, MO 63101
                                 314-418-1028

Wire Transfers should be sent directly to the Federal Reserve Bank in New York City with the

following information:

> ABA: 021030004
> Account Number: 68010727
> SWIFT address: FRNYUS33

Settling Defendant shall send notice that payment has been made in accordance with

Paragraph 46.

39.     Penalties shall accrue as provided in this Section regardless of whether EPA has

notified Settling Defendant of the violation or made a demand for payment, but need only be paid

upon demand. All penalties shall begin to accrue on the day after payment or performance is due

or the day a violation occurs, and shall continue to accrue through the date of payment or the

final day of correction of the noncompliance or completion of the activity. Nothing herein shall

26

prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

    40.      If Plaintiffs bring an action to enforce this Consent Decree, Settling Defendant shall reimburse Plaintiffs for all costs of such action, including but not limited to costs of attorney time.

    41.      Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

    42.      Notwithstanding any other provision of this Section, Plaintiffs may, in their unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Settling Defendant from performance of any other requirements of this Consent Decree.

## XVI. MODIFICATION

    43.      Transfers and timetables specified in Section VI (Confession and Satisfaction of Judgment) of this Consent Decree may be modified by agreement of EPA and the Settling Defendant. All such modifications shall be made in writing and approved by EPA.

    44.      Except as provided in Paragraph 43, other modifications shall be made to this Consent Decree in writing by the Parties with approval of the Court.

    45.      Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

27

## XVII.  NOTICES AND SUBMISSIONS

46.     Whenever, under the terms of this Consent Decree, notice is required to be

given or a document is required to be sent by one party to another, it shall be directed to

the individuals at the addresses specified below, unless those individuals or their successors give

notice of a change to the other Parties in writing. Written notice as specified herein shall

constitute complete satisfaction of any written notice requirement of the Consent Decree with

respect to the United States, the State, and Settling Defendant, respectively.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-3-08278)
P.O. Box 7611
Washington, D.C. 20044-7611

Andrea Madigan
Enforcement Attorney
US EPA Region 8
1595 Wynkoop Street
Denver, Colorado 80202

As to the State:

Roxanne Giedd
Deputy Attorney General
Office of Attorney General
State of South Dakota
1302 East Highway 14, Suite 1
Pierre, South Dakota 57501-8501

As to Settling Defendant:

John R. Frederickson
Frederickson Law Offices, P.C.

68 Sherman Street, Suite 311
Deadwood, South Dakota 57732

## XVIII. **RETENTION OF JURISDICTION**

47.     This Court shall retain jurisdiction over this matter for the purpose of
interpreting and enforcing the terms of this Consent Decree.

## XIX. **INTEGRATION AND APPENDICES**

48.     This Consent Decree and its appendices constitute the final, complete and
exclusive Consent Decree and understanding between the Parties with respect to the
settlement embodied in this Consent Decree. The Parties acknowledge that there are no
representations, agreements or understandings relating to the settlement other than those
expressly contained in this Consent Decree. The following appendices are attached to and
incorporated into this Consent Decree:

"Appendix A" is a list of the financial documents submitted to EPA by Settling
Defendant;

"Appendix B" is a map of the Site.

"Appendix C" is a description of the Adjacent Property currently owned by
Settling Defendant and subject to sale in accordance with the provisions of Paragraph 9; and

"Appendix D is a description of the Site Property currently owned by Settling
Defendant and subject to transfer to the State of South Dakota in accordance with the provisions
of Paragraph 8.

29

## XX.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

49.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment.  The United States and the State reserve the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate.  Settling Defendant consents to the entry of this Consent Decree without further notice.

50.     If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XXI.  SIGNATORIES/SERVICE

51.     The undersigned representatives of the Parties each certify that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

52.     Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

53.     Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on its

behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

## XXII. FINAL JUDGMENT

54.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between the Parties. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

31

SO ORDERED THIS _____ DAY OF _____, 20_.

_____
UNITED STATES DISTRICT JUDGE

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Commonwealth Mining Co.,* relating to the Gilt Edge Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

BRENDAN V. JOHNSON
United States Attorney
District of South Dakota

Date: 11/09/2009

ROBERT GUSINSKY
Assistant United States Attorney
District of South Dakota
515 Ninth Street, Suite 201
Rapid City, South Dakota 57701

Date: _____

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611

Date: _____

HEIDI K. HOFFMAN
Trial Attorney
Environmental Enforcement Section
United States Department of Justice
1961 Sout Street – 8th Floor
Denver, Colorado 80294
(303) 844-1392

33

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Commonwealth Mining Co.,* relating to the Gilt Edge Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

BRENDAN V. JOHNSON
United States Attorney
District of South Dakota

Date: _____

_____
ROBERT GUSINSKY
Assistant United States Attorney
District of South Dakota
515 Ninth Street, Suite 201
Rapid City, South Dakota 57701

Date: *12/7/09*

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611

Date: *12/09/2009*

HEIDI K. HOFFMAN
Trial Attorney
Environmental Enforcement Section
United States Department of Justice
1961 Stout Street – 8th Floor
Denver, Colorado 80294
(303) 844-1392

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Commonwealth Mining Co.*, relating to the Gilt Edge Superfund Site.

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 8

Date: 6/23/09

Kelcey Land
Acting Director, Technical Enforcement Program
Office of Enforcement, Compliance
and Environmental Justice

Date: 6/24/09

Michael T. Risner
Director, Legal Enforcement Program
Office of Enforcement, Compliance
and Environmental Justice

Date: 6/3/09

Andrea Madigan
Enforcement Attorney, Legal Enforcement Program
Office of Enforcement, Compliance
and Environmental Justice

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Commonwealth Mining Co.*, relating to the Gilt Edge Superfund Site.

**FOR THE STATE OF SOUTH DAKOTA**

Date: 5/28/09      Roxanne Giedd
                                Assistant Attorney General

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Commonwealth Mining Co*, relating to the Gilt Edge Superfund Site.

**FOR DEFENDANT  COMMONWEALTH MINING COMPANY**

Date: ___6/11/09___

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:
Title:
Address:
Phone: